Follett, J.
The sixth defense neither contains a general denial of the complaint, nor a specific denial of any allegation thereof. Nor does this defense state any new matter (facts) constituting a defense, or a counter-claim. In effect, it avers that upon the facts set forth in the complaint, as matter of law, the plaintiff is not, and the town of Delhi is, the proper party plaintiff.
It amounts to no more than averring by answer, that the facts stated in the complaint are insufficient to establish a cause of action in favor of a plaintiff. This, if true as matter of law, is a good ground of demurrer, or a good objection at the trial. Matter of law ought not to be averred in an answer (Purdy v. Commissioners, 54 N. Y. 276 ; 1 Chit. Pl. 16 Am. ed. 236; Steph. Pl. 191; Dan. Eq. Pl. 3 Am. ed. 567).
The object of an answer in an action at law, is to develop an issue of fact to be determined by a jury, but while, as a question of pleading, the sixth defense. is bad, the plaintiff, by demurring, has exposed himself to the rule, that a demurrer runs through all the preceding pleadings, and judgment is to be given against the first party whose pleading is defective in substance (People v. Booth, 32 N. Y. 397; Stoddard v. Onondaga Annual Conference, &c., 12 Barb. 573 ; 2 Wait Pr. 460 ; Van Santvoord Pl. 652).
*109 This brings us to the question raised by the defendant upon the argument, whether an action for the recovery of moneys received and accounted for by a supervisor, but not paid to his successor on demand, should be brought in the name of the supervisor, or in the name of the town. Section 5 (1 R. S. 349, as amended by L. 1866, c. 534), provides: “At every such accounting, the justices and town clerk shall enter a certificate in the supervisor’s book of accounts, showing the state of his accounts, at the date' of the certificate. If any supervisor shall neglect to account, or shall render a false account, or shall convert to his own use any money or securities which may come to his hands by virtue of his office, proceedings may be commenced against him in the name of the town of which he is a supervisor, in the supreme court, by action or otherwise, by the justices of the peace and town clerk of said town, to compel him to render such account, or to recover any money or property of the town which he has not duly accounted for.”
Sections 1 and 2 (1 R. S. 356), provide that all causes of action between a town and an individual must be prosecuted in the name of the town, except where the town officers are authorized by law to sue in their name of office for the benefit of the town.
Section 92 (2 R. S. 473) provides that, “Actions may be brought by . . supervisors of towns . .
“ 1. Upon any contract lawfully made with them, or their predecessors, in their official character.
“2. To enforce any liability, of any duty enjoined by law to such officers, or the body which they represent.
“3. To recover any penalties or forfeitures given to such officers, or bodies which they represent.
“4. To recover damages for any injuries done to the property or rights of such officers, or of the bodies represented by them.”
*110 The paragraphs are not numbered in the section, but they are here, for the convenience of reference.
Since the enactment of the foregoing provisions, several cases have been reported, brought to enforce the rights of towns ; and the decisions are not entirely harmonious.
Hathaway v: Town of Homer (5 Lans. 267), was brought by a supervisor to recover moneys claimed by his town, which had been paid to the defendant through its supervisor.
The general term held the action properly brought, though the attention of the court does not seem to have been called to chapter 534 of Laws of 1866. The case was reversed in the commission of appeals (54 N. Y. 655), on the ground that the defendant was not liable to pay the money sought to be recovered, to the plaintiff, or to his town.
Hathaway v. Town of Cincinnatus (62 N. Y. 434) was brought by a supervisor to recover moneys claimed' by his town, which had been paid to the defendant through its supervisor. It was held, upon the authority of Town of Lewis v. Marshall (56 N. Y. 663), and Town of Guilford y. Cooley (58 Id. 116), that the action was properly brought, though the attention of the court was not called to chapter 534 of Laws of 1866.
Town of Lewis v. Marshall (56 N. Y. 663),* it was held that the town could not maintain its action. The case was decided on the opinion of the general term, which was not reported.* The case was referred to in Town of Chautauqua v. Gifford (8 Hun, 154), in Town of Guilford v. Cooley (58 N. Y. 121) and in Hathaway v. Town of Cincinnatus (62 Id. 448).
The case was again, referred to in Hagadorn v. Raux (72 N. Y. 584), and it was there said that the statute of 1866 was overlooked by the court. The reports do not disclose the cause of action sought to be enforced *111 in. Lewis v. Marshall; and not having been furnished with the manuscript opinion, we are unable to determine what was there decided..
Town of Chautauqua v. Gifford (8 Hun, 152), was brought to recover money collected to pay interest on town bonds, and deposited by the collector with the defendants, who were bankers. The defendants agreed with the supervisor (who took office after the deposit), that if he would permit the money to remain on deposit with them until required to meet the interest, they would then pay it with interest. It was held that the town could not maintain the action. The decision seems to rest upon the ground that the action was to enforce a cause of action given to the supervisor under sections 92 and 93 (2 R. S. 473).
Town of Guilford v. Cooley (58 N. Y. 116), was brought to recover money which the defendant, as supervisor, had not accounted for. It was said (page 119) that section 5 of chapter 11 of title 4 of part 1 (1 R. S. 349), as amended by chapter 534 of Laws of 1866, provides that if any supervisor .... shall convert to his own use any money or securities which may come to his hands by virtue of his office, an action may be commenced in the name of the town for such conversion. This language embraces the case at bar, but it was used in a case where the action was for the recovery of funds unaccounted for, and cannot be fegarded as an authority for the defendant’s position in this case.
Hagadorn v. Raux (72 N. Y. 583), was brought by a supervisor against his predecessor in office, to recover moneys and securities of the town erroneously omitted from his account rendered to the town officers, and converted to his own use. It was held that 1 R. S. 349, § 5, as amended by L. 1866, c. 534, was applicable, and that the action could only be maintained in the name of the town.
*112 None of these cases present the precise point involved in this contention.
The statute makes it the duty of the outgoing supervisor to pay to his successor the moneys remaining in his hands as ascertained by the town auditors (1 R. S. 359, § 7).
This action is brought to enforce that duty, and is within the class of actions which supervisors are authorized, by the second paragraph of section 92 (2 R. S. 473, above quoted), to maintain in their official capacity, unless that right is taken away by section 5 of 1 R. S. 349, as amended by chapter 534 of Laws of 1866, above quoted.
The section last cited, in express terms, authorizes the town to maintain actions in two cases. 1. To compel the supervisor to render his account. . 2. To recover any money or property of the town unaccounted for.
It is contended by the defendant that this statute also authorizes an action by the town, to recover moneys accounted for to the town auditors by a supervisor, and retained after the expiration of his term of office, and that it bars the present plaintiff from maintaining an action therefor.
The authorization of such an action by the town for this cause seems, from the previous sentences of the section, to have been in , the mind of the author of this statute, but it fails to confer in terms such authority. But for this section we think the authority of the supervisor to maintain this action could not be seriously questioned. This section does not, in terms, repeal section 92 of 2 R. S. 473, and the repealing of statutes by implication is not favored (Sedgw. on Stat. & Const. L. 2 ed. 98). .We think section 92 confers upon this plaintiff the right to maintain this action, and that the right is not conferred, by section 5 (1 R. S. 349, as amended), upon the town to maintain it.
*113 But if by judicial construction, the section last cited can be made to confer upon the town the right to maintain this action, we are of the opinion that it does not repeal section 92, or exclude the present plaintiff from maintaining it. As a general rule, all public officers (though not expressly authorized by statute), have capacity to sue commensurate with their public trusts and duties (Supervisor of Galway v. Stimson, 4 Hill, 136; Looney v. Hughes, 26 N. Y. 516; People v. Supervisors, 32 Id. 477). The common law right, sanctioned, as before shown, by the statute, . canno't be taken away by implication.
In either form, the action is for the benefit of the town, and if section 5 gives the town a right of action in its name, it merely provides a cumulative, and not an inconsistent remedy.
The rule that a statute is not to be repealed by implication, is peculiarly applicable to statutes giving cumulative remedies not inconsistent with each other.
Where a statute confers a new right, and gives a new remedy, that remedy must be strictly pursued. But this is not such a case ; for a new right of action is not given, a right of action for the benefit of the town having existed, prior to this statute, by the Revised Statutes, and, independently of any statute, by the common law.
Where a remedy exists at common law, and a statutory remedy is given, the former is not abrogated by the latter (Crittenden v. Wilson, 5 Cow. 165). The reason of the rule is applicable to statutory remedies not inconsistent with each other.
A right of action sometimes exists in favor of different persons. In some cases, either the principal or agent may sue ; in others, a person may sue individually, or in his representative capacity ; in others, an action may be brought in the name of the con *114 signor or consignee, for the recovery of damages for goods lost or injured.
The demurrer to the sixth defense of the amended answer must be sustained, with costs.*

 See page 103 of this volume.

For recent cases in this State and elsewhere on the question of the liability of towns to action, see, in addition to the cases cited in the opinion, the following: People v. Esopus Town Auditors. 74 N. Y. 310; Utica v. Miller, 62 Ind. 230; Greenville County v. Runion, 9 S. C.1; Neely v. Yorkville Town Council, 10 Id. 141; Williams v. Roberts, 88 Ill. 11; New Albany Bank y. Danvillen, 60 Ind. 504; Eaton v. Manitowoc County Supervisors, 44 Wis. 489; State v. Parsons, 40 N. J. L. 1; Compare Whitall v. Gloucester, Id. 302; Wallingford v. Hall, 45 Conn. 350; Commissioners v. Commerce Bank, 97 U. S. (7 Otto) 374; St. Louis, &c. R. R. Co. v. Summit, 3 Ill. App. 155; Martin v. People, 87 Ill., 524.
Note on Actions Against Towns.
In Horn v. Town of New Lots (New York Court of Appeals, December, 1880, not yet reported,) it was held, 1. That where the invalidity of an assessment will appear from the proof which must be made in order to enforce it, money taken under it can be recovered back before the assessment is vacated; and in such case an allegation in the complaint that the law laying the assessment is unconstitutional and void, is sufficient without an averment that it is void on its face.
2. Town bonds, issued under a law providing for laying an assessment for their payment, may be valid although tlw assessment is void; and the town may therefore be liable in an action for money had and received, for money taken under color of the assessment and applied to the payment of the bonds.
3. The legislature, by authorizing a town to issue bonds, confer upon it the power of obtaining the money to pay them, and it must therefore follow that if the town without right applies the money of any one to the payment of its bonds it incurs a like liability with a natural person or a municipality doing the same thing.
4. Although a town is not a full corporate body, and though almost' all its acts are done by officers whose offices are created by statute, yet the officers do not stand for the town, and the town may not be liable for money received by them. Hence, in an action against the town, averments that the town had and received plaintiff’s money, and that it was applied to the payment of the bonds of the town, are sufficient to show that the money came into the hands of the town.
5. In this action the complaint showed that money belonging to *115 plaintiS, which was a surplus arising on the foreclosure of a mortgage, and was in the custody of the county clerk, was taken from him by the town collector by virtue of a tax levied by the board of supervisors for assessments laid ]by an unconstitutional law, and was by him paid to the county treasurer to the credit of the town on account of the assessment. The county treasurer applied tha money to the payment of the bonds of the town, which had been issued to provide for the improvements in respect to which the void assessment had been laid. The bonds were alleged to be valid. The complaint also alleged that the town had wrongfully taken plaintiff's money without his consent and applied it to its own use. Held, on demurrer, that the complaint stated a good cause of action.
The allegations of complaint, which were thus sustained, were in the following form:
“I. That on or about the sixth day of December, 1870, William S. Horn, the husband of this plaintiff, departed this life, being an inhabitant of the city of New York, seized and possessed of the following described real property, with the appurtenances; that is to say: [Here follows description of premises.]
“ II. That the said William S. Horn, in and by his last will and testament, bearing date the ninth day of April, 1869, gave, devised and bequeathed unto the plaintiff all the property, real and personal, of which he should die possessed, including the real property herein-before particularly described.
“ III. That the said will was on or about the third day of August, 1871, duly proved before, and admitted to probate by the surrogate of the county of New York, of which county said testator was an inhabitant at the time of his death, as aforesaid, and recorded in the office of the said surrogate, in Book 203 of Wills, page 148.
“ IV. That the real property hereinbefore particularly described, was, at the death of the testator, incumbered by a mortgage to secure payment of two thousand dollars and interest, dated January 17th,1866, theretofore executed and delivered to one Daniel W. Brown, by one Charlotte Anne Pickersgill, the grantor of said testator William S. Horn, and recorded in the office of the Register of the county of Kings, in Liber 631 of Mortgages, page 539, on the twenty-sixth day of January, 1866, which said mortgage and the bond accompanying the same were at the time of the death of the said testator held and owned by one Harvey S. Easton.
“ V. That after the death of the said testator, in or about the month of October, 1871, the said Harvey S. Easton commenced an action in the supreme court, in the county of Kings, for the foreclosure of the above-mentioned mortgage.
*116 “ YI. That such proceedings were had in said action, that judgment of foreclosure and sale was rendered, and afterwards, and on or about the third day of May, 1872, the said mortgaged premises were sold, pursuant to the judgment of the court, by or under the direction of John H. Bergen, Esq., Referee, duly appointed for that purpose.
“ VII. That thereafter and on or about the eighteenth day of January, 1873, the said referee filed in the office of the clerk of the county of Kings his report of sale, whereby it appeared, and the fact was, that after paying the amount due the plaintiff in said action, and making other payments directed by the judgment, there remained a surplus of two thousand four hundred and ninety-seven dollars and eighteen cents.
“ VIII. That pursuant to an order of the court the said surplus was on the fourth day of January, 1873, deposited by the said referee with the clerk of the county of Kings.
“ IX, That thereafter and on or about the first day of February, 1874, George W. Palmer, then collector of the defendant, the town of New Lots, as such collector, took, collected and received from said surplus moneys the sum of twenty-one hundred and ninety-seven dollars and eighty-two cents, under color of a warrant issued to him by the supervisors of the county of Kings, and to satisfy an assessment or pretended assessment against the real property first hereinbefore described, for the expense of regulating, grading, graveling, curbing, and guttering Atlantic avenue, in the town of New Lots, and of the expense of crosswalks thereon, some or all, under and pursuant to an act of the legislature of the State of New York, entitled, ‘ An act to lay out, open and grade Atlantic avenue, in the town of New Lots, Kings county,’ passed April 10th, 1809, and the acts amendatory thereof and in addition thereto.
“X. That the provisions in said act and acts, for said assessment and the assessments levied thereunder, including the assessment or protended assessment aforesaid, are in violation of the constitution of the State of New York, and wholly void.
“XI. That the said sum of §2,197.82 so taken and received by the collector as aforesaid, belonged to, and was, and still is the property of the plaintiff; and was taken and received without the knowledge or consent of the plaintiff, and without any notice to her.
“ XII. That afterwards and prior to the first day of August, 1876, but at what particular date the plaintiff has no knowledge or information sufficient to form a belief, the said George W. Palmer, as col-lector as aforesaid, without the knowledge or consent of, or any notice to the plaintiff, paid over the said sum of $2,197.82 to the county treasurer of Kings county, to the credit of the defendant, of account *117 of the assessment aforesaid, and after such payment the said sum was, without the knowledge or consent of, or any notice to the plaintiff, applied to the payment of certain bonds issued in behalf of the defendant, the town of New Lots, pursuant to law, and valid obligations of said town, and issued as provided in the acts aforesaid, and in conformity therewith.
“XIII. That the defendant has wrongfully taken and received, without the knowledge or consent of the plaintiff, the aforesaid sum of twenty-one hundred and ninety-seven dollars and eightv-two cents, the property of the plaintiff, and applied the same to its own use, and has wholly failed and neglected to pay over the same to the plaintiff.”
Wherefore, &c.